IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| JEFFERY SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:16-cv-01288-DCN |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| BREWCO, INC., | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on defendant Brewco Inc.'s ("Brewco") motion for summary judgment as to all of plaintiff Jeffrey Smith's ("Smith") claims. For the reasons set forth below, the court grants in part and denies in part Brewco's summary judgment motion.

## I. BACKGROUND

This litigation arises out of a workplace accident on a large, industrial multi-head trim saw ("trim saw") that occurred on March 16, 2013 at a facility owned and operated by North American Container ("NAC"). Brewco is a company engaged in the business of manufacturing industrial saws for saw mills and wood fabrication facilities and manufactured the trim saw at issue in this case. The trim saw was used to cut lengths of lumber from which to construct pallets. Smith was an employee of NAC when this accident occurred, and worked in a position as a "catcher/stacker." Brewco delivered the trim saw to NAC's facility in Rowesville, South Caroline in 2012. NAC installed the trim saw.

On March 16, 2013, Smith was stacking wood that came out of the trim saw when he observed that a piece of wood had become jammed inside of the blades of the trim

1

saw. He walked around to the input side of the trim saw and reached into the blade to pull out the piece of jammed wood. Once Smith removed the wood jammed in the blades, the trim saw restarted its rotation and Smith's fingers got caught in the trim saw blades, severely injuring two fingers on his right hand. As a result of this accident, Smith alleges that he has sustained severe and permanent injury, incurred medical expenses, lost income and will incur future medical costs.

Smith filed this suit against Brewco alleging three products liability causes of action: negligence, strict liability, and breach of warranty. On November 20, 2017, Brewco filed a motion for summary judgment, to which Smith responded on January 3, 2018. Brewco replied on January 17, 2018. The court held a hearing on March 6, 2018. The motion has been fully briefed and is now ripe for the court's review.

## II. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Rule 56(c) of the Federal Rules of Civil Procedure requires that the district court enter judgment against a party who, 'after adequate time for discovery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 190 (4th Cir. 1997) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). Any reasonable inferences are to be drawn in favor of the nonmoving party. See Webster v. U.S. Dep't of Agric., 685 F.3d 411, 421 (4th Cir. 2012). However, to defeat summary judgment, the nonmoving party must identify an error of law or a genuine issue of disputed material fact. See Fed. R. Civ. P. 56(a);

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); see also Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003).

Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence. See Anderson, 477 U.S. at 252; Stone, 105 F.3d at 191. Rather, "a party opposing a properly supported motion for summary judgment . . . must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat, 346 F.3d at 522 (quoting Fed. R. Civ. P. 56(e) (2002) (amended 2010)). If the adverse party fails to provide evidence establishing that the factfinder could reasonably decide in his favor, then summary judgment shall be entered "regardless of '[a]ny proof or evidentiary requirements imposed by the substantive law.'" Id. (quoting Anderson, 477 U.S. at 248).

### III.   DISCUSSION

Smith brings this products liability case against Brewco on a number of theories, including negligence, strict liability, and warranty. The court first addresses Brewco's overarching arguments that Smith has failed to establish that the trim saw was the proximate cause of his injury and then moves on to discuss the remaining claim in this case, the design defect claim.[1]

   **1.   Brewco's Overarching Arguments**

---

[1] At the hearing on this motion, Smith abandoned the following claims: manufacturing defect, breach of warranty, and failure to warn. Therefore, the court does not analyze these claims.

Brewco makes a number of arguments that attack the sufficiency of Smith's products liability action as a whole. The court addresses each of these arguments before moving on to assess the contours of each of Smith's theories of defects in this products liability action. Specifically, Brewco contends that: (1) Smith's own failure to follow the proper lockout/tag out procedures was the proximate cause of his injury as opposed to the trim saw; (2) NAC's defective training of Smith on the proper lockout/tag out procedures was the proximate cause of Smith's injury; and (3) the trim saw was materially altered after Brewco delivered it to NAC so Smith is barred from recovery.

A plaintiff must establish three elements for a products liability case based on the theory of strict liability: (1) he was injured by the product; (2) the injury occurred because the product was in a defective condition, unreasonably dangerous to the user; and (3) the product, at the time of the accident, was in essentially the same condition as when it left the hands of the defendant. Bragg v. Hi-Ranger, Inc., 462 S.E.2d 321 (S.C. Ct. App. 1995). While under any products liability theory the plaintiff must show that a product defect was a proximate cause of his injuries, "proximate cause does not mean the sole cause" and a "defendant's conduct can be a proximate cause if it was <u>at least one</u> of the direct, concurring causes of the injury." Small v. Pioneer Mach., Inc., 494 S.E.2d 835, 842 (S.C. Ct. App. 1998) (emphasis added). The court rejects each of Brewco's arguments on causation.

### a. Smith's Comparative Negligence

Brewco contends that even if there is a viable products liability claim here, it should be barred as a matter of law because Smith's comparative negligence was the proximate cause of his injury and that, as a matter of law, Smith's negligence outweighs

4

any negligence attributable to Brewco. ECF No. 30 at 6. Smith does not make a specific argument as to comparative negligence but does argue that the opinion of Brewco's expert Brian Boggess ("Boggess") that the accident was caused by Smith's comparative negligence in not following proper lockout/tagout procedures is not dispositive on this issue. Specifically, Smith points to the testimony of his own expert Bryan Durig ("Durig") that it was the trim saw's defective design, including Brewco's failure to design the trim saw with additional safety features or provide written instructions with the trim saw, that contributed to the accident occurring. ECF No. 34 at 6. The court finds that comparative negligence—which is generally a question best left for the jury—should be left to the fact-finder here. Certainly, a large part of the causation argument is based on dueling expert opinions. The question of which expert to believe is one that is within the province of the jury, not this court. See Electro-Mech. Corp. v. Power Distribution Prod., Inc., 926 F. Supp. 2d 822, 838 (W.D. Va. 2013) (recognizing that a party's "disagree[ments] with the substance of [an] expert's opinions . . . are best addressed on cross-examination.").

South Carolina ascribes to a modified version of comparative negligence known as the "less than or equal to" approach, where the plaintiff in a negligence action can recover damages if his negligence does not exceed 50%. Singleton v. Sherer, 659 S.E.2d 196, 206 (S.C. Ct. App. 2008). The South Carolina Supreme Court has held that comparative negligence is a jury question. Hurd v. Williamsburg County, 611 S.E.2d 488, 492 (S.C. 2005) ("The determination of respective degrees of negligence attributable to the plaintiff and the defendant presents a question of fact for the jury, at least where conflicting inferences may be drawn.") That being said, where evidence of the plaintiff's

5

negligence is "overwhelming," courts have granted summary judgment to a defendant based on comparative negligence. For example, in Bloom v. Ravoira, 529 S.E.2d 710, 713 (S.C. 2000), the South Carolina Supreme Court held that where a pedestrian "entered the street quickly [in the middle of the block from between two parked cars] and without any warning to drivers" and was struck by a motorist who was driving no more than 25 miles per hour and was not driving recklessly as the pedestrian attempted to cross a street, the district court was correct in granting the motorist summary judgment on the basis of comparative negligence. In relevant part, the Bloom court stated:

> Here, the undisputed facts establish that [the pedestrian] attempted to cross the street but did not do so in a safe, reasonable manner. Any factual issues that might exist as to [the motorist's] fault in this accident cannot alter the inescapable conclusion that, as a matter of law, [the pedestrian's] fault exceeded fifty percent. Where evidence of the plaintiff's greater negligence is overwhelming, evidence of slight negligence on the part of the defendant is simply not enough for a case to go to the jury.

Id. at 713. But that is not the case before the court.

Here, there is evidence that Smith was never given any training on the proper lock-out/tag out safety procedure to deenergize the trim saw. For example, Smith testifies that he did not know how the trim saw was shut down, how to make sure that was no power to the trim saw, that he had never even heard of the term "lockout, tagout," and that no employee at Brewco had ever discussed with him how to shut down the trim saw. ECF No. 30, Ex. 4, Smith Dep. 48:1–18. Moreover, Brewco's own expert report on the incident states that Smith's training was "strictly-on-the-job," that Smith "never operated the Saw nor was he trained to operate it." ECF No. 30, Ex. 6, SEA report at 2. Smith testified that when he proceeded to go inside of the trim saw to unjam it of the wood, "no one tried to stop him and that it was a daily, routine practice to unjam the

6

machine." Id. at 3. On the other hand, there is deposition testimony from Brewco's corporate representative Joshua Dearmond ("Dearmond") that no engineer was involved in the design of trim saw, and indeed that Brewco did not even employ any engineers or contract any engineering firms regarding the design of the trim saw. ECF No. 34, Ex. 3, Dearmond Dep. 8:2–14.

Under these facts, a reasonable jury could find that while Smith was negligent in unjamming the trim saw, his level of negligence was not greater than Brewco's such that he is barred from recovery. Therefore, the court denies Brewco's summary judgment motion on this ground.

### b. NAC's Lack of Training

Brewco also argues that it was NAC's lack of training on the proper lock out procedures, as opposed to the trim saw itself, that proximately caused Smith's injury. The court reiterates that a "defendant's conduct can be a proximate cause if it was <u>at least one</u> of the direct, concurring causes of the injury." Small., 494 S.E.2d at 842. While it may be that NAC's lack of training on proper tag-out/lock-out procedures was <u>one of</u> the direct causes of Smith's injury—Durig himself opines that if Smith had followed these procedures he would not have been injured—that does not mean that a reasonable jury could not find that Brewco's design of the trim saw was also a proximate cause of Smith's injury.

Certainly, Brewco is free to use the "empty chair defense" at trial to argue that it was NAC's negligence in failing to train Smith on the proper "lockout, tagout" procedures to stop the trim saw that led to his injury. See Smith v. Tiffany, 799 S.E.2d 479, 484 (S.C. 2017) (Explaining that the "empty chair defense," where a defendant

7

"retains the right to assert another potential tortfeasor, whether a party or not, contributed to the alleged injury or damages" remains intact). Under the "empty chair defense," Brewco may assign fault for Smith's injuries to NAC. In Machin v. Carus Corp., 799 S.E.2d 468, 478 (S.C. 2017), the court held that where a defendant "asserts a defense that assigns fault for the plaintiff's injuries to the plaintiff's employer, the defendant shall, under the well-established 'empty chair' defense have the right to present such evidence and require the fact-finder to consider whether the employer's actions were the cause of the plaintiff's injuries." Machin, 799 S.E.2d at 476.

But here, Dearmond acknowledged that Brewco was aware wood could become jammed in the blade of the trim saw, causing it to stop rotating. ECF No. 34, Ex. 3, Dearmond Dep. 16:9–1. Indeed, Dearmond explained that during the design process Brewco implemented a number of changes to account for the saw's tendency to jam, including locating the trim saw's blades in the center of the machine such that they cannot be reached at arm's length from the position of the stacker/catcher, creating a control panel with an "emergency e-stop" that would stop the trim saw and implementing a starter panel with a disconnect switch that would turn the power to the entire machine off. Id. 16:18–17:5. It would not be a stretch for a jury to find that Brewco should have also included written instructions for the lockout/tagout procedure to remove wood that had jammed the blades on the trim saw, especially where Brewco acknowledged that it could have provided such written instructions in a cost-effective manner. Id. 17:1–21:1. A jury could find that Smith's accident was caused by both NAC's lack of adequate training on proper tagout/lockout procedures as well as Brewco's design of the trim saw, but that it was Brewco's actions—including its decision not to include any written

instructions on the proper tagout/lockout procedures with the saw—that were the proximate cause of Smith's injury. Therefore, the court finds that NAC's inadequate training is not a ground for granting summary judgment.

### c. Material Alteration

Lastly, Brewco argues that it is entitled to summary judgment on Smith's product liability claim because the trim saw was not "in essentially the same condition as when it left the hands of the defendant" and that such an alteration was not foreseeable. ECF No. 30 at 9. The court is not convinced. While NAC did alter the trim saw after Brewco delivered it by changing the height of the trim saw, this height alteration was not material to the injury that Smith suffered.

Under S.C. Code Ann. § 15-73-10(1), a seller is subject to liability if the product "reach[es] the user or consumer without substantial change in the condition in which it is sold." In Jackson v. Bermuda Sands, Inc., 677 S.E.2d 612, 615 (S.C. Ct. App. 2009), the court quoted Section 402A of the Restatement (Second) of Torts to note that:

> "[t]he burden of proof that the product was in a defective condition at the time that it left the hands of the particular seller is upon the injured plaintiff; and unless evidence can be produced which will support the conclusion that it was then defective, the burden is not sustained."

South Carolina courts have barred recovery where "it can be shown that a product was (1) materially altered before it reached the injured user and (2) such alteration could not have been expected by the manufacturer or seller." Ervin v. Cont'l Conveyer & Equip. Co., 674 F. Supp. 2d 709, 723 (D.S.C. 2009).

Brewco makes some argument that it was NAC's addition of 18-inch feet on the saw that led to Smith's injuries, as opposed to Brewco's design of the saw arms themselves. Certainly, the addition in height to the trim saw was an alteration, but it may

not be a material one. Indeed, when asked if the alterations to the height of the trim saw affected "the functionality of the machine," Dearmond answered that it did not. ECF No. 34, Ex. 3, Dearmond Dep. 31:13–32:3. However, Dearmond did testify that the increased height of the trim saw necessitated that Smith "would actually have to enter the envelope of the machine," and that raising the machine make it "more difficult" for Smith to reach the blades to get the jammed wood out. ECF No. 34, Ex. 3, Dearmond Dep. 32:9–33:3. But what Smith contends is the design defect is that he removed the jammed wood from the trim saw and that the trim saw began to turn again— Dearmond testified that the height elevation of the trim saw had no effect on that particular operation of the machine. ECF No. 34, Ex. 3, Dearmond Dep. 32:21–33:3. Therefore, the alteration in the height of the trim saw does not suffice as a "material" alteration of the product such that recovery is barred.

2. **Strict Liability**

Smith brings this strict liability claim against Brewco under a design defect theory, alleging that the design of the trim saw was defective and unreasonably dangerous. In South Carolina, "[t]here are three defects a plaintiff in a products liability lawsuit can allege: 1) a manufacturing defect, 2) a warning defect, and 3) a design defect." Watson v. Ford Motor Co., 699 S.E.2d 169, 174 (S.C. 2010). "When a design defect claim is made, a plaintiff alleges that the product at issue was defectively designed, thus causing an entire line of products to be unreasonably dangerous." Id.

Brewco contends that Smith's design defect claim must be dismissed because he has presented no legitimate alternative designs as required by Branham v. Ford Motor Co., 701 S.E.2d 5, 16 (S.C. 2010). ECF No. 30 at 10. Specifically, Brewco argues that

10

while Smith has provided the report of his expert in support of his design defect claim, Durig discusses only "potential alternative designs" as opposed to "actual reasonable alternative design[s]." Id. Smith rebuts that he has presented sufficient evidence of the lack of safety features on the trim saw as well as the lack of written instructions with the sale of the saw to survive summary judgment. In support, Smith offers "staggering testimony" from Dearmond where Dearmond admits that it had knowledge of other saw manufacturers who, for example, had installed a breaker or a safety switch that would automatically turn off power to the trim saw in the event of jammed wood. ECF No. 34 at 8. The court finds that Smith has presented sufficient evidence of a design defect to survive summary judgment.

A plaintiff proceeding under a design defect claim in South Carolina must "'point to a design flaw in the product and show how his alternative design would have prevented the product from being unreasonably dangerous.'" Graves v. CAS Med. Sys., Inc., 735 S.E.2d 650, 658 (2012), reh'g denied (Dec. 12, 2012) (quoting Branham, 701 S.E.2d at 16). In presenting the alternative design, the plaintiff must include consideration of the "costs, safety and functionality of the alternative design." Branham, 701 S.E.2d at 16. The jury then conducts a risk-utility test, "weighing the costs and benefits attendant to [the manufacturer's] decision" to use one design over another to determine if the danger associated with the use of the product outweighs the utility of the product. Id.

While Brewco certainly could have added additional safety features to the saw, South Carolina courts have noted that "products are not defective simply because they do not have all the optional safety features that could be included." Moore v. Barony House

Rest., LLC, 674 S.E.2d 500, 503 (S.C. Ct. App. 2009). In Branham, the Supreme Court of South Carolina warned that a jury question is not created "merely because a product can be made safer." Branham, 701 S.E.2d at 16. That being said, Durig presents five alternative safety designs to the trim saw that are worth considering in-depth: (1) barrier guards to prevent an employee from physically accessing the trim saw; (2) a guard installed over the top of the blade such that the blades were covered; (3) a motor braking system; (4) an automatic circuit breaker that could have been installed to shut down the machine when it stalls; and (5) emergency stop buttons that could have been incorporated on other areas of the trim saw in addition to the control panel. ECF No. 30, Ex. 7, Durig Report. Brewco contends that Smith has not proposed a reasonable alternative design because for none of these five proposed safety additions has Durig presented any written alternative designs that would pass the Branham risk-utility test. ECF No. 30 at 10–14. The court reviewed the relevant portions of Durig's deposition and agrees with Brewco that Durig has not drawn up an actual design for his proposed safety improvements, and most tellingly, that he has no cost estimates for these safety improvements. See ECF No. 30, Ex. 3, Durig Dep. 90:1–23 (Durig testifying that he has no knowledge of anyone that makes a multi-trim saw with a barrier guard all the way around the external area of the saw, has not designed such a barrier guard, and has not run numbers on the cost for the design, manufacture, and installation of a barrier guard); Id. 93:1–16 (Durig testifying that he does not have a design of the multi-trim saw with a guarding system, has not figured out the "specific cost" of the guarding system, or how difficult it would be to incorporate a guarding system into the design of the saw); Id. 94:15–95:25 (Durig testifying that he is not aware of any multi-trim saw designed and built by 2012 that has a

motor braking mechanism, has not designed a motor braking system that would be applicable for the trim saw in this case, and has not figured out the cost to implement the motor braking system).

However, while the court agrees with Brewco that Durig's designs are merely conceptual, Smith has pointed to testimony from Dearmond that is relevant to the alternative design analysis. Most saliently, Durig opines that the alternative design applies not just to the mechanical design of the trim saw but also to the inclusion of adequate written operations instructions with the trim saw. ECF No. 34, Ex. 2, Durig Dep. 45:1–46:10 (Durig stating that "one of the issues in this case" is that Brewco did not provide any operating instructions with the sale of the trim saw). In his deposition, Dearmond explained that Brewco "avoid[s] written instructions" that accompany the product, and instead employ a "hazard analysis" as part of the design process." ECF No. 34, Ex. 3, Dearmond Dep. 14:13–15:25. He further testified that the "lockout,tagout" procedure for removing wood that has jammed the blades on the trim saw was not written down because it "is industry standard procedure," but ultimately—and importantly—agreed that written instructions and onsite post-installation training could have been done "in a cost-effective manner." Id. 17:12–18:17. Brewco attempts to argue that the reason it did not provide any written instructions for the proper lockout/tagout procedure on the trim saw—or indeed, any written instructions at all—is because such instructions are given only at the behest of the customer, and here NAC did not ask for such instructions. But the court finds it feasible that a jury could determine that where Brewco has determined that it was cost-effective to include such written instructions with a product and discussed during the design process the possibility of wood getting jammed in the

blades of the trim saw, it should have included these written instructions with every product, not just on an "if requested" basis. At the very least, where Durig presents an alternative design for the trim saw that includes written instructions on the "lockout, tagout" procedure, and Brewco itself admits that written instructions could be done in a "cost-effective manner," Smith has fulfilled his burden of presenting a reasonable alternative design that satisfies the risk-utility test in Branham. This alone means that Smith's design defect claim survives summary judgment.

Furthermore, this court draws from its order in Wickersham v. Ford Motor Co., 194 F. Supp. 3d 434, 439 (D.S.C. 2016), where defendant Ford Motor Co. made a similar argument that plaintiff's design defect claim failed because the alternative design was purely "conceptual," and that the plaintiff had provided no analysis of the "'costs, safety and functionality associated with the alternative design' as required by Branham." This court found that an expert's testimony that other manufacturers had utilized the proposed alternative design in the past "certainly suggests that it is feasible from a cost, safety, and functional perspective." Id. It went on to hold that "[t]he fact that other manufacturers successfully implemented the raised threshold approach provides more than a reasonable basis for concluding that Ford could have done the same here." Id. This is what the court has before it here. Dearmond testifies that while Brewco did not consider including an automatic circuit breaker that would turn off power to the rotating blades of the trim saw in the event of a jam for this particular product, it had implemented such a feature in other similar machines that it sold around the same time that it sold this trim saw. ECF No. 34, Ex. 3, Dearmond Dep. 23:3–25:11. Specifically, Brewco testified that it added automatic circuit breakers on a saw that it sold to Brown-Forman, a "very safety

14

conscious" client. ECF No. 34, Ex. 3, Dearmond Dep. 24:3–26:2. Now, the Brown-Forman saw was a circular saw as opposed to a trim saw. But that does not mean that the addition of automatic circuit breakers was feasible on a circular saw but not on a trim saw.

Lastly, Brewco attempts to argue that Brewco's testimony that a design such as an automatic circuit breaker was used on other saws does not constitute an "actual reasonable alternative design" because Brewco "affirmatively stated that it is not cost-effective." ECF No. 37 at 3. Certainly, the lack of cost estimates and the use of conceptual designs is fatal to a plaintiff's design defect claim under the risk-utility test set forth in Branham. For example, in Holst v. KCI Konecranes Int'l Corp., 699 S.E.2d 715, 719–20 (S.C. Ct. App. 2010), the South Carolina Court of Appeals found that the lower court properly granted summary judgment when the plaintiff failed to present evidence of a feasible alternative design or that a risk-utility analysis was conducted in accordance with Branham. Similarly, in Bragg v. Hi–Ranger, Inc., 462 S.E.2d 321, 330 (S.C. Ct. App. 1995), the Court of Appeals held that the lower court properly granted a directed verdict because the plaintiff had failed to introduce evidence that an alternative design is feasible, reasoning that a plaintiff cannot rely upon mere conceptual design theories. But the court reiterates what it articulated in Wickersham—the fact that other manufacturers had utilized the proposed design fulfills the mandate of Branham that the plaintiff present evidence of a reasonable alternative design. Furthermore, while Brewco did state that certain safety features would affect the cost-effectiveness of the trim saw, it did not say that adding these safety features would be prohibitively expensive. For example, when asked if the inclusion of an automatic circuit breaker for the trim saw motors would have

15

adversely affected the "safety, efficiency or cost-effectiveness of the multi-head saw," Dearmond answered that the circuit breaker "would have affected the cost-effectiveness" but could not say by how much. ECF No. 34, Ex. 3, Dearmond Dep. 28:3–12. It is a foregone conclusion that for nearly every single product, the addition of a safety feature will be more costly than a product with no safety features. But this does not mean that the risk-utility test is automatically so weighted against the addition of the safety feature so as to keep the question from the jury. Cost is but <u>one</u> consideration in the plaintiff's presentation of an alternative design. See Branham, 701 S.E.2d at 16 ("[P]resentation of an alternative design must include consideration of the costs, safety <u>and</u> functionality associated with the alternative design.").

There is merit to Smith's argument that an industrial trim saw should not be designed in such a manner that it is delivered with no safety instructions, and is allowed to automatically start up immediately after wood is jammed into its blades—especially where Brewco was aware that wood jamming in the blades was a common problem. ECF No. 34, Dearmond Dep. 16:13–17:24 (Brewco acknowledging that wood could become jammed in the blade, causing the trim saw to stop rotating, but that the lockout/tagout procedure to remove the jammed wood was not written down). Or at least, there is enough merit for his argument to go to a jury. The court finds that Smith has presented sufficient evidence of a design defect and an alternative design for his design defect claim to survive summary judgment.

## IV. CONCLUSION

For the reasons set forth above, the court **GRANTS IN PART AND DENIES IN PART** Brewco's motion for summary judgment, **GRANTING** the motion as to Smith's failure to warn, manufacturing defect, and breach of warranty claims, but **DENYING** as to the design defect claim.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**March 9, 2018
Charleston, South Carolina**